### THOMAS NIXON *against* CHARLES YOUNG.

Court will not grant a new trial, where there has been a recovery in the Mayor's Court of NewYork, and defendant afterwards obtains a certificate of bankrupt in Pennsylvania, and being taken on a *ca. sa.* on the judgment, voluntarily pays part of the money, and gives his bond for the residue.

MOTION for a new trial.    The cause was tried this term, when the following facts appeared in evidence.

A contract was made between the plaintiff and defendant respecting certain lands.    The plaintiff arrested the defendant by process out of Mayor's Court at New York, returnable 6th June 1786, aud the matters in variance between them were referred by consent to arbitrators. The defendants attorney in his absence, attended and cross-examined the plaintiff's witnesses, and was allowed further time to procure testimony.    He after some considerable delay, agreed that the report should be made by the arbitrators, who accordingly found 114*l.* 2*s.* 8*d.* New York currency due to the plaintiff.    Whereupon the defendant's attorney confessed judgment to the plaintiff, for 125*l.* 14*s.* 8*d.* including costs, on the 9th January 1787.

A commission of bankrupt issued against the defendant in Philadelphia, on the 3d March 1787, and on the 7th May following he obtained his certificate of conformity.    He was afterwards taken on a *ca. sa.* issued on the judgment at New York, and while under execution, advised with counsel whether he could not obtain enlargement under his certificate, but was disuaded from making the attempt.    At length he offered of his own accord, terms of accommodation to the plaintiff, and proposed to pay him what money he could raise, and give him his bond and warrant of attorney to enter up judgment for the balance.

This was agreed to, and he accordingly paid to the plaintiff 50*l.* or thereabouts, and gave his judgment bond for the residue 76*l.*    New York currency on the 13th June 1787, payable in six months.    This was done without any threats or under any other duress than being under execution at the time.    No attorney was present on the part of the defendant when the bond was executed.    He was immediately after released from the *ca. sa.*

The defendant in 1786, also brought a suit in the Mayor's

Court at New York against the plaintiff; but has not hitherto filed his declaration.

The plaintiff entered up his judgment on the bond in the Common Pleas of Philadelphia county in September, 1791, and issued a *ca. sa.* against the defendant. The judgment was opened in that court on the 28th December 1792, and the defendant paid the demand into the sheriff's hands, subject to the event of the trial.

The jury gave a verdict for the plaintiff this term, for 288 dollars and 11 cents costs.

Messrs. Lewis and Rawle for defendant, moved for a new trial on four grounds.

1st. The discharge of the defendant by the general bankrupt law of Pennsylvania, cancelled his debts in a sister state, and the subsequent taking of him on the *ca. sa.* was tortious and illegal. The case of Miller v. Hall. Dall. 229, is express to this point. Under our bankrupt act if a bankrupt is arrested for a debt due before his certificate, he shall be discharged on common bail. 2 Dall. St. Laws, 177, § 24. If he is taken under an execution founded on a judgment previous to his certificate, any judge of the court may discharge him. Ib. 378, § 26.

2. The execution of the bond by the defendant took place when he was under duress and unconscious of his rights, and therefore must be supposed by surprise. Where one has been unlawfully imprisoned, and gives a bond, it shall not bind him. 2 Inst. 482. 9 Vin. Abr. 316, 317, 319. Cro. Jac. 187. An administratrix being illegally in custody, and giving a warrant of attorney to confess judgment, the judgment was set aside, though an attorney was present. 6 Mod. 163. One committed to gaol on a false accusation, avoided his own bond. Allen. 92.

It may be said, that no detainer of goods, nor even imprisonment of a party's person, will be considered as duress where the party may have his remedy. 2 Stra. 916. 1 Leon. 68. But to this it may be answered, that the defendant's residence was in the state of Pennsylvania, and the modern courts of justice abhor circuity of action. The King's Bench has directed a bond and warrant of attorney to be delivered up, as having been obtained by fraud when the party was in custody, though no proceedings had thereon. Doug. 186. If a bond be given by force or terror, though not so as to make it to be duress, it shall not be carried into execution. 2 Vern. 497. The want of a court of equity shall not prejudice the defendant.

3. No attorney for the defendant was present when he gave the bond and judgment. It is not contended that the instru-

ments are void on that account, but it is an additional reason why the party should be let into a full defence on the merits  In England, an attorney must be present on the part of the person in custody, when he gives a warrant of attorney to confess a judgement. 2 *Stra.* 902. It may be objected that no such rule has been adopted in this court. But though an attorney be present, if a warrant has been obtained by practice, it will be set aside. 6 Mod. 85, 163. Cases of fraud and imposition are exceptions to all rules, even where the party is confined under an execution, and gives a bond to obtain his liberty. Cowp. 281.

4. The plaintiff makes a claim inconsistent with the laws of the state, and he shall not be allowed to ask relief in the courts of Penn-sylvania, in direct opposition to her laws. If a person will make use of the process of B. R. he must conform to the rules of that court. 2 Stra. 1247. Where an engagement is entered into abroad to pay in England, it must be made according to the laws of England. 2 Burr. 2077. Payment cannot be enforced in a smuggling transaction. 4 Term Rep. 466. This state is bound to vindicate her own citizens. The counsel whom the defendant advised with in New York were clearly wrong, when they dissuaded the defendant from attempting relief under his certificate ; but it will not be expected that he should have made such attempt against their express opinion. He gave the bond under a firm persuasion that he could not be other-wise relieved from his confinement. It cannot possibly be considered as gratuitous. Legal process was made use of to obtain an illegal end, and this circumstance will justify this court in fully reviewing the original consideration of the bond. It has been determined, that assumpsit will lie to recover money obtained from any one by extortion, imposition, oppression, or taken an undue advantage of the party's situation. 2 *Burr.* 1012 *Espin.* 4. Where the plaintiff pawned his plate and paid more than the legal interest to obtain it again, the court held the action maintainable for the money so obtained from him against his consent. An objection was taken that the party should not have paid the money but brought trover ; but it was overruled, as the plaintiff might want his plate immediately. 2 *Stra.* 915. The same answer may be given in the present case :—the defendant wished for immediate liberty :—his deprivation thereof was combined with the circumstance of mistaken judgment. But if a recovery can be had, where money has been oppressively obtained, it will surely warrant a defence before the money is paid.

If all the creditors of an insolvent person consent to accept a composition for their respective demands, upon an assignment of his effects by a deed of trust, to which they are all parties, and one of them, before he executes, obtain from the insolvent a promissory note for the residue of his demand, by refusing to execute till such note be made, the note is void in law as a fraud on the rest of the creditors; and a subsequent promise to pay it is a promise without consideration, which will not maintain an action. 2 Term Rep. 763. In this case it is said by Lord Kenyon, that "the transaction is bottomed in fraud, which is a species of immorality; and not being available as such, cannot be revived by a subsequent promise." *Ib.* 765. And Buller J. remarks, " here the defendants were absolutely in the power of the plaintiffs at the time when this note was given; they took an undue advantage of the distressed stituation of the defendants. If the note had been obtained by actual compulsion, there is no doubt but it would have been void; now this is equivalent to it. *Ib.* 766."

Messrs. Ingersoll and Tilghman *è* contra. It is worthy of recollection, that the bond in controversy was executed on the 13th June 1787, and the decision in Miller *v.* Hall was made in January term following. Great diversity of opinion existed on the point then in question, even in Pennsylvania, and there are still doubts entertained in some parts of the union thereon. A bill of exceptions is now depending in the Supreme Court of the United States on the same question, from the Circuit Court of Massachusetts, as detemined by Iredel and Lowell Justices, and the same point was differently resolved by Justice Wilson in Rhode Island. It is therefore evident that the question is not yet at rest, and that it cannot be assumed as a fact, that when the obligation was given, it was the generally received idea, that a discharge by the bankrupt laws of one state cancelled the debts of the bankrupt in other parts of the United States.

None of the circumstances disclosed in evidence will warrant a suspicion of extortion, imposition, oppression, or taking an undue advantage of the defendant's situation, by the plainitff. All was fair and open on his part. The defendant, in confinement, states his case to counsel of the first eminence, ane is guided by their opinion. The offers of accommodation came from himself

The jugdment in the Mayor's Court of New York grounded on the report of referees, is conclusive evidence of the plaintiff's demand.

Under the act of congress of 26th May 1790, the judicial proceedings of any state, authenticated in a certain manner, shall have such faith and credit given them in every court within the United States, as they have by law or usage in the courts of the state, from whence the records shall be taken. 1 U. S. Laws, 162.

But where one is under a mere moral obligation to pay, his promise to pay shall bind him ; as a bankrupt promising to pay, after obtaining his certificate. Cowp. 290. Bl. Com. 445. *A multo fortiori*, where he gives a bond, which implies a consideration in itself. *Ib.* 446. Suppose a debt barred by the act of limitations, but blended with such circumstances, as to induce counsel on a case stated, to be of a different opinion, and the party in consequence thereof, should give a new bond for the demand, could he avail himself of the mistake of his counsel, as a legal defence?

In the case cited by the defendant, from Cowp. 281, the rule of 15 Car. 2, as to an attorney's presence being necessary, when a warrant of attorney for confessing a judgment is executed by one in custody, does not extend to cases where the defendant is in custody, under an execution ; but only to cases where he is in custody upon mesne process. Admitting then the rule to extend in its utmost latitude to this state, the plaintiff is within the distinction ; and according to the other case in 2 Inst. 482. *Executio juris non habet injuriam.*

The general rule established *ex comitate et jure gentium* is that the place where the contract is made, and not where the action is brought is to be considered in expounding and enforcing the contract. But the rule admits of an exception, where the parties, at the time of making the contract, had a view to a different kingdom. 1 Bla. Rep. 258. Here the bond is payable generally to a person living in New York, and has no reference to the laws of this state ; though it is even contended, such a bond under all its circumstances executed here, would have been good. Action lies for goods sold abroad, which are prohibited in England, if the delivery of them be complete abroad, though the vendor knows they are to be run into England. Cowp. 341. Debt follows the person and may be recovered in England, let the contract of debt be made where it will ; and the law allows a fiction, for the sake of expediting the remedy. *Ib.* 344. A subsequent deliberate act where the party is fully informed of every thing, makes the bargain good. 3 Wms. 294. A new agreement may confirm what was at first a doubtful bargain. 1 Atky. 301. 1 Wils. 286. 2 Vez. 125.

By the court. When this case is fully examined in all its parts, it would appear highly extraordinary in us to grant new trial. The plaintiff, a citizen of New York, brings a suit in the Mayor's Court there, against a citizen of this state. Judges of the parties own choosing are appointed to settle the matters in variance between them. They award a sum of money to be paid to the plaintiff, on which judgment is entered for him. We are bound to consider the judgments of a court to be right and just. (Carth. 31. 1 Atky. 42.) But this rule holds in a much stronger degree by the laws of the union, when the judicial proceedings of the court of a sister state come before us. The defendant after obtaining his certificate of conformity to the bankrupt laws of this state, goes to New York, and is there taken in execution. He does not apply to a judge of the court for a *habeas corpus*, but after advising with counsel, makes an offer to his creditors, to pay part of the money, and give his bond for the residue. This he agrees to, voluntariy and freelly ; for his being under a custody on the *ca. sa.* does not differ the case. The plaintiff is guilty of no imposition or extortion ; and the defendant might, if he thought proper, revive the original debt, which was due from him in good conscience. We therefore see no grounds to grant a new trial, and deny the motion.

Judgment for the plaintiff.